IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

KEVIN JETER, JOE A. JETER, )
BARBARA LUCAS, JAMES H., MILLER, )
SHARON RIGSBY MILLER, )
LARRY SMITH, and JANICE SUE PARKER, )
individually and as Class Representatives )
on Behalf of All Similarly-Situated Persons, )
)
                **Plaintiffs,** )
)
v. ) Case No. 12-CV-411-TCK-PJC
)
WILD WEST GAS, LLC, )
WILD WEST GAS, INC., )
BULLSEYE ENERGY INC., )
FOUNTAINHEAD, LLC, and )
KRS&K, an Oklahoma )
General Partnership, )
)
                **Defendants.** )

## OPINION AND ORDER

Before the Court is Defendants Wild West Gas, LLC, Wild West Gas, Inc., Bullseye Energy Inc., and KRS&K's Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Jurisdiction (Doc. 40).[1]

### I.  Procedural History and Factual Background

Plaintiffs filed this putative class action in federal court on July 24, 2012, alleging that jurisdiction was proper under the Class Action Fairness Act ("CAFA"). The case was assigned to United States District Judge James Payne. On January 14, 2013, Judge Payne transferred the case to United States District Judge John Dowdell. Judge Dowdell granted Defendants' unopposed

---

[1] Defendant Fountainhead, LLC did not move to dismiss. When the Court refers to "Defendants," it refers only to the moving defendants identified above.

motion to stay pending the Tenth Circuit's decisions in appeals of class certification orders in two royalty underpayment class actions with similar facts to those presented here. On August 9, 2013, Defendants filed notice that such decisions had been issued. On August 15, 2013, Judge Dowdell recused, and the case was transferred to the undersigned judge. On August 19, 2013, the Court lifted the stay and ordered a joint status report. Plaintiffs then filed an unopposed motion for an additional sixty-day stay to consider "the propriety of filing a potential Amended Complaint" and whether "class action relief is appropriate in light of the decisions by the Tenth Circuit" (Doc. 31 at 2), which the Court granted. Plaintiffs filed their First Amended Complaint ("FAC") on October 18, 2013, and the Court lifted the stay.

On November 7, 2013, Defendants filed the pending motion to dismiss, arguing that the Court lacks subject matter jurisdiction over the putative class action based upon certain exceptions set forth in CAFA. Upon agreement and joint motions of the parties, the Court entered a schedule governing discovery and briefing on the motion to dismiss and withdrew its order for a joint status report. Due to Defendants' presentation of new arguments and evidence in their reply brief, the Court permitted Plaintiffs to file a surreply. The motion became ripe on June 25, 2014.

The FAC alleges that: (1) two named Plaintiffs, Larry Smith and Janice Sue Parker, are citizens of states other than Oklahoma, (2) all five Defendants are citizens of Oklahoma, and (3) the amount in controversy exceeds $5 million. Plaintiffs allege that they and members of the putative class "have owned or currently own oil, gas, and mineral interests in lands and producing wells that have been drilled on land that is located" in the Northern District of Oklahoma and that such interests are subject to leases owned or controlled by Defendants. (FAC ¶¶ 15-16.) Plaintiffs allege that Defendants underpaid royalties due and owing to them and assert causes of action under

Oklahoma law for breach of implied covenant and lease, breach of fiduciary duty, fraud by concealment, and an accounting. Plaintiffs seek certification of the following class:

> All non-excluded persons and entities who, as of the date of filing of this Complaint, are or were royalty owners in producing gas wells located in the Northern District of Oklahoma where one or more of the Defendants is or was a lessee and/or operator and/or working-interest owner under the Leases, and/or where the Defendants control or controlled the operators, working-interest owners, and/or lessees under the Leases. The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee. The Class does not include any wells located on federal, state, county, municipal, military, or Indian lands in which one or more Defendants own any interests.
>
> The persons or entities excluded from the Class are persons or entities who are not citizens of any State on the date of filing this Complaint, persons or entities who have settled or released their royalty-related claims with any of the Defendants as of the date of filing of this Complaint, any Indian Tribe or Nation, federal, state and local governments, including agencies, departments, or instrumentalities of the United States of America and State of Oklahoma (including public trusts, counties, and municipalities), publicly traded oil and gas exploration companies and their affiliates, and persons or entities that Plaintiffs' counsel are prohibited from representing under the Oklahoma Rules of Professional Conduct.
>
> Other persons or entities excluded from the Class are persons or entities who have entered into Leases with any of the Defendants which contain specialized provisions allowing the Defendants to subtract expenses from royalties that would otherwise be contrary to Oklahoma law.

(*Id.* ¶ 33.)

## II. CAFA Background

CAFA "extends the subject matter jurisdiction of the federal courts to encompass putative class actions in which at least one plaintiff is diverse from one defendant and where the amount in controversy exceeds $5 million." *Weber v. Mobil Oil Corp.*, 506 F.3d 1311, 1313 (10th Cir. 2007); 28 U.S.C. 1332(d)(2) (outlining requirements for federal jurisdiction under CAFA). "CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts." *Coffey v. Freeport McMoran Copper & Gold*,

3

*Inc.*, 581 F.3d 1240, 1243 (10th Cir. 2009); *see Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1108 (D. Or. 2012) (explaining that Congress extended federal jurisdiction to class actions that lacked complete diversity but that involved interstate cases of national importance).

Even when CAFA's general jurisdictional requirements are met, there are exceptions *requiring* district courts to decline to exercise jurisdiction, *see* 28 U.S.C. § 1332 (d)(4)(A)&(B) (setting forth elements of two mandatory exceptions known, respectively, as "local controversy exception" and "home state exception"), and exceptions giving district courts *discretion* to decline to exercise jurisdiction, *see id.* § 1332(d)(3) (setting forth elements of discretionary exception known as "interest of justice" exception).² These exceptions are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006); *see Bey*, 904 F. Supp. 2d at 1108 (explaining that CAFA exceptions are designed to "prevent the pendulum from swinging too far in the other direction" and to "make clear that truly local disputes still do not belong in federal court").

Although CAFA exceptions are most commonly litigated in the context of a motion to remand following removal to federal court, *see, e.g.*, *In re Sprint Nextel Corp.*, 593 F.3d 669 (7th Cir. 2010); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007), it is permissible for a

---

² In their briefs, Plaintiffs refer to the §1332(d)(4)(B) exception as the "local controversy" exception. However, most courts have identified § 1332(d)(4)(A) as the "local controversy" exception and § 1332(d)(4)(B) as the "home state" exception. *See generally Preston v. Tenet Healthsystem Memorial Med. Ctr*, 485 F.3d 804, 810 (5th Cir. 2007) ("*Preston II*") (labeling § 1332(d)(4)(B) as "home state" exception and § 1332(d)(4)(A) as "local controversy" exception). In this Order, the Court refers to § 1332(d)(4)(B) as the home state exception and § 1332(d)(4)(A) as the local controversy exception. In their surreply, Plaintiffs confusingly referred to the "interest of justice" exception in § 1332(d)(3) as the "home state" exception. Section 1332(d)(3) is referred to in this Order as the interest of justice exception.

4

defendant to seek dismissal under the exceptions, *see, e.g.*, *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 & n.2 (2d Cir. 2013) (affirming dismissal of class action under CAFA exception and citing cases where CAFA exception was raised by a defendant). However, where a *defendant* invokes a CAFA exception, there is no danger that plaintiffs are attempting to "game the system" and avoid federal jurisdiction. *See* S. Rep. 109-14, at 5 (2005) (setting forth one purpose of CAFA as making "it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction"); 28 U.S.C. § 1332(d)(3)(C) (inquiring, under interest of justice exception, as to whether case was pleaded by plaintiffs to avoid federal jurisdiction). Instead, the defendant is asserting that the litigation is truly local in nature and, presumably, should be re-filed in state court.

### III. Classification of Motion

Defendants' motion is labeled as one to dismiss "for lack of jurisdiction," and Defendants contend that this Court "does not possess original jurisdiction of this matter under" CAFA. (Mot. to Dismiss 1.) However, Defendants do not argue that Plaintiffs have failed to satisfy CAFA's general requirements in § 1332(d)(2). Instead, Defendants argue that the Court lacks "jurisdiction" due to application of the home state exception set forth in § 1332(d)(4)(B) or, alternatively, the interest of justice exception set forth in § 1332(d)(3).

As a threshold matter, the Court clarifies that CAFA exceptions are not jurisdictional. If proven, they require or permit a court to "decline to exercise" federal jurisdiction that otherwise exists. *See Gold*, 730 F.3d at 141-42 (aligning with Seventh and Eighth Circuits and holding that "decline to exercise" language indicates that CAFA exceptions are not jurisdictional requirements). In this way, invoking a CAFA exception is similar to requesting that a court abstain from exercising federal jurisdiction. *See Catron v. Colt Energy, Inc.*, No. 13-4073-CM, 2013 WL 6016231, at *2

(D. Kan. Nov. 13, 2013) (collecting circuit cases holding same) (issue of whether § 1332(d)(4) exceptions apply is akin to question of whether court must or should abstain from exercising federal jurisdiction); *Bey*, 904 F. Supp. 2d at 1107 (explaining that "many circuit courts have compared the § 1332(d)(4) exceptions" to the abstention doctrine).

Therefore, the Court construes Defendants' motion as requesting that the Court decline to exercise jurisdiction. *See Gold*, 730 F.3d at 141 (explaining that defendants' motion was phrased as motion to dismiss for lack of jurisdiction, or, in the alternative, motion to decline to exercise jurisdiction, and that latter was proper motion). Procedurally, the Court treats the motion similarly to a motion to abstain under Rule 12(b)(1), which is permissible even though such motions are not actually "jurisdictional" in nature. *See generally* 5B Wright & Miller, *Federal Practice and Procedure* § 1350 (explaining that abstention can be properly raised by Rule 12(b)(1) motions and that "the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses" even if they are not technically jurisdictional in nature). Therefore, the Court will permit and consider evidence outside the pleadings in deciding whether to exercise jurisdiction over the controversy. *See generally Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (court has wide discretion to allow affidavits, documents, and a limited evidentiary hearing to resolve disputed facts in addressing Rule 12(b)(1) motion). Both parties have acquiesced to the Court's consideration of evidence outside the pleadings in deciding this question, and neither party has urged the Court to delay ruling on this motion until later stages of the proceeding.

**IV. Analysis of CAFA Exceptions**

Section 1332(d)(4)(B), the home state exception, provides that a district court "shall decline to exercise jurisdiction" over a class action if "two-thirds or more of the members of all proposed

plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." In order to successfully invoke the home state exception, Defendants must: (1) establish that at least 66% of the putative class are Oklahoma citizens; (2) identify the primary defendants; and (3) demonstrate that the primary defendants are also Oklahoma citizens. *See Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3rd Cir. 2013) (setting forth similar four-part test).

The interest of justice exception set forth in § 1332(d)(3) "provides a discretionary vehicle for district courts to ferret out the 'controversy that uniquely affects a particular locality to the exclusion of all others.'" *Preston II*, 485 F.3d at 812. Section 1332(d)(3) provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under [Section 1332(d)(2)] over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of--
>
> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3)(A)-(F). In order to successfully invoke the interest of justice exception, Defendants must (1) establish that greater than 33% but less than 66% of the putative class are Oklahoma citizens, (2) identify the primary defendants; and (3) demonstrate that the primary defendants are also Oklahoma citizens. If Defendants make this threshold showing, then the Court may consider the above-listed factors in deciding whether a discretionary dismissal serves the interest of justice.

For purposes of both exceptions, Plaintiffs challenge Defendants' evidence regarding the percentage of class members that are Oklahoma citizens. The Court refers to this element as the "class citizenship element." The class citizenship element is common to both exceptions, although it has different threshold requirements for each. Because the class citizenship element is dispositive of both exceptions, they are analyzed together below.

### A. Burden of Proof

As the parties invoking the CAFA exceptions, Defendants bear the burden of proving each element of the CAFA exceptions. *See Commisso v. Pricewaterhouse Coopers, LLP*, No. 11 Civ. 5713, 2012 WL 3070217, at *4 (S.D.N.Y. July 27, 2012) ("While a plaintiff typically bears the burden of establishing subject matter jurisdiction, once jurisdiction under CAFA has been established, the burden shifts to the party advocating the applicability of a CAFA exception.") (internal citation omitted); S. Rep. No. 109-14, at 44 (2005) ("It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption."). The relevant burden of proof is by a preponderance of the evidence. *See In re Sprint Nextel Corp.,* 593 F.3d at 673 (requiring plaintiffs seeking remand to establish CAFA exception by a preponderance of the evidence); *Preston II*, 485

F.3d at 814 (same). Courts must "resolve any doubt" about the applicability of CAFA exceptions against the party invoking them. *Westerfeld v. Ind. Processing*, *LLC*, 621 F.3d 819, 823 (8th Cir. 2010).

Courts have noted the difficulty of proving CAFA exceptions and, particularly, the class citizenship element. *See Preston v. Tenet Healthsystem Mem. Med. Center, Inc.*, 485 F.3d 793, 801 (5th Cir. 2007) ("*Preston I*") (observing that "marshaling evidence of citizenship for the unnamed class members may be a formidable task"); *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006) ("We understand that evidence of class citizenship might be difficult to produce in this case."). Nonetheless, CAFA's legislative history indicates that exceptions should ordinarily be shown by "readily available information" rather than after "burdensome discovery."

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, limited discovery may be necessary to make these determinations. *However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information.* Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions. For example, in assessing the citizenship of the various members of a proposed class, it would in most cases be improper for the named plaintiffs to request that the defendant produce a list of all class members (or detailed information that would allow the construction of such a list), in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified. Less burdensome means (e.g., factual stipulations) should be used in creating a record upon which the jurisdictional determinations can be made.

S. Rep. 109-14, at 44 (2005).[3]

---

[3] This discussion contemplates a plaintiff seeking to invoke the exception and is less helpful in analyzing what type of proof defendants (who are presumably in possession of the relevant information) must present.

9

Consistent with this legislative history, motions to remand or dismiss based upon a CAFA exception must be made within a reasonable time and typically before "full blown class discovery." *See Gold*, 730 F.3d at 143 & n. 2 (holding that motions to dismiss under CAFA's home state exception must be made within a reasonable time and that "it is preferable that such motions be made at the earliest practicable time") (affirming dismissal of class action filed in federal court that had been pending for three years under abuse of discretion standard but expressing skepticism as to whether this was reasonable amount of time, noting numerous instances in which exception had been raised "without full blown class discovery"); *see also Preston II*, 485 F.3d at 821 (explaining that these determinations are frequently made as threshold determinations and at "preliminary" stages of litigation, rather than at class certification or other later stages of proceedings).

### B. Proving "Citizenship" Generally

Under Tenth Circuit law, "a person is a citizen of a state if the person is domiciled in that state." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). A person "acquires domicile in a state when the person [1] resides there and [2] intends to remain there indefinitely." *Id.* In approaching the two-part domicile/citizenship test, a district court should consider the totality of the circumstances. *Id.* Examples of relevant evidence include the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; and several other aspects of human life and activity. *Id.* at 1201. Although a person's residency in a state does not control whether they are also a "citizen" of that state, *see Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) (residency cannot be equated with citizenship), the

Tenth Circuit has also stated that the "place of residence is *prima facie* the domicile." *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Further, some courts have stated that residency "creates a presumption" of citizenship unless the evidence establishes to the contrary. *See Nat'l Inspection & Repairs, Inc. v. George May Int'l Co.*, 202 F. Supp. 2d 1238, 1242 (D. Kan. 2002).

C.     **Proving Class Citizenship Element of CAFA Exceptions**

The Court is unaware of any guidance from the Tenth Circuit regarding the class citizenship element of the CAFA exceptions.[4] As explained by the Fifth Circuit, it is not practical for a court to apply the traditional, multi-faceted "citizenship" test when analyzing the citizenship of a class or putative class. *See Preston II*, 485 F.3d at 816 (rejecting argument that court should "engage in the arduous task of examining the domicile of every proposed class member before ruling on the citizenship requirement" and declining to adopt the same burdens placed on parties seeking to prove citizenship in ordinary diversity cases). Instead, the "evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness." *Id.* Further, a moving party need not provide a precise, actual number of putative class members, and it is sufficient to provide evidence allowing the court to "make a reasonable estimate of the total class for determining" citizenship percentages under the CAFA exceptions. *Id.* at 818.

---

[4] Indeed, there is little Tenth Circuit law addressing CAFA at all. *See generally Dart Cherokee Basin Operating Co., LLC v. Owens*, 730 F.3d 1234, 1238 (10th Cir. 2013) (dissenting in en banc panel's failure to grant a petition for rehearing in case involving proof of CAFA's $5 million requirement) (explaining that "CAFA is a newcomer to the scene and its intricacies are unfamiliar to many of us" and urging panel to provide "guidance regarding the procedural requirements" of CAFA).

**D.     Analysis of Class Citizenship Element**

Plaintiffs' class definition is not tied to Oklahoma citizenship, or even Oklahoma residency. The class includes persons or entities that, as of the filing date, owned certain interests in wells owned or operated by Defendants in the Northern District of Oklahoma. Clearly, a person can have a royalty interest in an Oklahoma well without being an Oklahoma citizen. As royalty interests are often passed down through generations, it is not uncommon for non-Oklahomans to receive royalty checks based upon the production of Oklahoma oil wells. Thus, the class definition alone tells the Court very little about the citizenship of putative class members and certainly does not demonstrate that any particular percentage are Oklahoma citizens. *See Reece v. AES Corp.*, No. CIV-12-457, 2013 WL 1342379, at *4 (E.D. Okla. 2013) (holding that class definition tied to Oklahoma "residency" was not determinative because residency and citizenship were not identical concepts).[5]

In this case, however, Defendants do not rely on the class definition alone. Defendants have produced evidence attempting to show statistical data about the putative class. Specifically, Defendants presented the Supplemental Declaration of Robert M. Kane ("Kane Declaration"),[6] the President of Defendant Bullseye Energy, Inc. ("Bullseye"). Mr. Kane was asked to "determine the total number of royalty owners who were paid royalties on behalf of Bullseye for gas sold from Oklahoma wells in which Bullseye was the working interest owner and/or operator,"[7] and then

---

[5] Because it is not tied to Oklahoma residency, as was the class definition in *Reece*, the class definition here is even less probative of citizenship.

[6] Plaintiffs identified numerous problems with Kane's original one-page declaration, which was attached to Defendants' motion to dismiss and wholly lacking in explanation or evidentiary support. Because the Court then allowed discovery and supplemental briefing, the Court focuses on the supplemental declaration.

[7] Despite this statement, Kane later states that his totals and the attached schedule include putative class members owning interests in wells owned or operated by any of the

determine what subset of that group "had addresses in Oklahoma." (Kane Decl. ¶ 2.) At Kane's direction, a "schedule" was prepared which contains columns of information in the following categories: system, SSN/Tax ID, owner name, address, city, state, zip, owner type, state, type of address, and number of royalty owners. (Kane Decl., Ex. 1.)[8]

Based on the data in the schedule, Kane concludes that (1) there exist 594 total royalty interest owners who are putative class members, and (2) 420 of the 594 (or 70.7%) "had Oklahoma addresses" as of the date Plaintiffs filed the FAC. Of the 420 interest owners with Oklahoma addresses, 356 were natural persons. Of the 356 Oklahoma mailing addresses for these "natural person" owners, Kane concluded that 211 were residential addresses; 90 were rural route or farm addresses; 7 were business addresses; 39 were post office boxes located in Bartlesville, Oklahoma or rural communities; and 1 was a post office box located in Tulsa, Oklahoma. (*Id.* ¶ 19.) This information was obtained based upon "review of the addresses themselves and/or research using 'Google Earth,' 'Zillow,' and online county assessor records." (*Id.* ¶ 19.) As to the remaining 64 interest owners with Oklahoma addresses, Kane confirmed that 8 were corporations, all of which were incorporated in Oklahoma. (*Id.* ¶ 20.) As to the remaining 56 interest owners with Oklahoma addresses, Kane did not specify whether they were natural persons, corporations, trusts, or estates. However, Kane concludes that "for all types of putative class members, 211 are confirmed residential addresses; 98 are confirmed rural route (farm addresses); 63 are Oklahoma post office

---

Defendants, rather than just Bullseye. (*Id.* ¶ 12.) Thus, although less than clear, it appears that Kane's conclusion includes interest owners in wells owned or operated by the other Defendants.

[8] Although not explained by Kane, it appears this schedule was prepared based upon Bullseye and/or other Defendants' internal records showing where royalty payments were made.

13

box numbers; 13 are confirmed business addresses; and the remaining 35 appear to be residential or commercial addresses." (*Id.* ¶ 21.)

In summary, Kane calculates the following percentages of Oklahoma citizens for three possible scenarios: (1) 70.7% - if the Court counts all putative class members with any type of Oklahoma mailing address as Oklahoma citizens; (2) 52% - if the Court excludes post office box addresses and counts only natural persons with confirmed residential or rural route addresses and Oklahoma corporations as Oklahoma citizens; and (3) 37% - if the Court excludes both post office boxes and rural route addresses and counts only natural persons with confirmed residential addresses and Oklahoma corporations as Oklahoma citizens. (*Id.* ¶¶ 15, 22, 23.)

The Court concludes that Defendants have failed to demonstrate the class citizenship element for either the home state exception or the interest of justice exception because there are fatal flaws in Defendants' evidentiary presentation. Kane did not present any evidence regarding the source material used to derive the schedule and his calculations. The schedule does not contain a title or footnotes with citations. Kane did not explain whether these names and addresses were pulled from Bullseye's records or from other Defendants' records. Kane did not explain why the total class number jumped from 491 to 594 between his first and second declarations. Plaintiffs contend that various names on the schedule "do not appear to be tied by any official record [or] to a lease that falls within the Class definition," based upon other information they have obtained in discovery. (Surreply 4.) Although there may be explanations for any discrepancies, such explanations have not been presented to the Court in the form of admissible evidence. As argued by Plaintiffs, "these deficiencies might have been remedied if Defendants had provided or even identified the sources of information that they claim to be supportive of their conclusory 'facts.'" (*Id.*) The Court gave

14

the parties a considerable amount of time and discovery to fully address these questions, and Defendants have nonetheless failed to sufficiently explain how putative class members were identified for inclusion in the schedule.[9]

Further, and most importantly, Plaintiffs have presented counter-evidence casting significant doubt on the identification of putative class members and the overall reliability of the schedule. Mr. James Miller, a named Plaintiff, presented an affidavit stating that Defendants' schedule includes at least 16 deceased individuals, whose interests have passed to others. (Miller Aff. ¶ 2-17.) In some instances, the decedent and the interest owner were double counted. Miller concludes that 18 individuals were erroneously included on Defendants' schedule based on this problem. (*Id.* ¶ 17.) Miller also testified that seven more individuals on the schedule are related to or employed by Defendants, who are excluded from the class definition. (*Id.* ¶ 27.) Including other problems identified by Miller, he concluded that 28 total individuals were erroneously included on the schedule. Although Miller's affidavit does nothing to shed light on the ultimate question of what percentage of class members are Oklahoma citizens, it highlights the lack of explanation (and therefore credibility) of Defendants' process in identifying putative class members.

Defendants bear the burden of proof, and the Court is not persuaded that the schedule provides a reasonable and credible set of data for making reasonable assumptions or credible estimates as to the percentage of Oklahoma citizens. This is primarily because Defendants have not persuaded the Court that the schedule provides any credible estimate of the identity or overall number of putative class members and have not adequately explained the sources of the information

---

[9] Defendants did not request an evidentiary hearing. Given the time already spent by the parties in litigating this motion to dismiss, the Court has elected not to conduct a hearing.

used to derive the schedule. The defined class is a discrete and finite one, and it should be identifiable based on Defendants' records. However, there are holes and deficiencies in Defendants' evidence that simply cannot be ignored, given that the Court must resolve all doubts against Defendants in deciding whether to exercise federal jurisdiction. *See Evans*, 449 F.3d at 1166 (affidavit did not adequately explain how potential plaintiffs were selected by movant) ("We conclude that the evidence adduced by the plaintiffs wholly fails to present a credible estimate of the percentage of the plaintiff class who are citizens of Alabama."); *cf Preston II*, 485 F.3d at 821 (affirming remand to state court under CAFA exception where movant hospital had established with credible records the "number of patients hospitalized" at the relevant time and their pre-Katrina addresses).

Assuming that Defendants had presented more reliable evidence, it is still not entirely clear that Defendants could reach even the 33% threshold necessary for the interest of justice exception. In order to reach this percentage, Defendants are relying upon "Oklahoma mailing addresses" as a proxy for residency in Oklahoma, and then asking the Court to presume that residency in Oklahoma raises the presumption of citizenship when unrebutted by Plaintiffs.[10] Some courts addressing similar questions under the CAFA exceptions have found that mailing addresses used for sending payments or bills are insufficient to prove the class citizenship element under a CAFA exception. *See, e.g., In re Sprint Nextel Corp.*, 593 F.3d at 674 (class definition of cell phone users with Kansas number and billing address was insufficient by itself to satisfy plaintiffs' burden of proof)

---

[10] To reach the higher 66% threshold, Defendants are counting mailing addresses that are post office boxes, which are arguably less probative of citizenship than residential or rural route addresses.

(expressing unwillingness to rely on "[s]ensible guesswork," although court was "inclined to think that at least two-thirds of those who have Kansas cell phone numbers and use Kansas mailing addresses are probably Kansas citizens"); *Reece*, 2013 WL 1342379, at *4 n.7 (noting that, even if plaintiffs had presented proper evidence that putative class members' royalty payments were sent to Oklahoma addresses, this would have been "less than conclusive on the citizenship issue"); *HMB Interests, LLC v. Chesapeake Louisiana LP*, No. 12-2344-cv, 2010 WL 3604008, at *3 (W.D. La. Sept. 18, 2013) ("The fact that a majority of the lessors list a Louisiana mailing address is not sufficient for the Plaintiffs to meet their burden of proof as to the citizenship requirement."). In contrast, other courts have found that mailing addresses are sufficient to raise a presumption of continuing domicile and citizenship. *See, e.g., Preston II*, 485 F.3d at 821-22 (where the defined class was a finite group of persons who were hospitalized by the defendant following Hurricane Katrina, mailing addresses in hospital records allowed district court to make a "credible estimate that at least one-third of the class were citizens of Louisiana" when the complaint was filed); *Commisso*, 2012 WL 3070217, at * 5 (holding that class citizenship element was satisfied based on class definition that limited plaintiffs to individuals who worked in New York office and defendants' evidence that 67.4% of the putative class members had a New York address) ("This data is more than sufficient to create a presumption that more than one third of the putative class members are New York citizens, and Commisso has not attempted to rebut this presumption."); *Bey*, 904 F. Supp.2d at 1105 (relying on defendants' evidence that 90% of putative class members, which were

employees at an Oregon corporation, had an Oregon address and had therefore presented prima facie evidence of citizenship in Oregon).[11]

In this case, the Court need not delve into the "mailing address" issue due to the lack of overall reliability of the evidence presented by Defendants. The Court's decision is based upon Defendants' failure to explain or produce the source data underlying the schedule and Plaintiffs' counter-evidence casting serious doubt on the overall reliability of the schedule. As shown above, mailing addresses may be sufficient in some cases to allow the Court to make a credible and reasonable estimate for purposes of the class citizenship element. However, the Court offers this case law to demonstrate that, even if Defendants' evidence in support of Kane's statistical conclusions had been presented in a reliable format, Defendants still faced difficulty in proving Oklahoma citizenship by use of mailing addresses alone.

## V. Conclusion

Defendants have failed to meet their burden of proving that the Court should decline to exercise jurisdiction under either the home state exception, 28 U.S.C. § 1332(d)(4)(B), or the interest of justice exception, *id.* § 1332(d)(3). Specifically, Defendants have failed to present reliable evidence permitting the Court to make a reasonable estimate of the percentage of putative class members that are Oklahoma citizens. Accordingly, Defendants' motion to dismiss (Doc. 40) is

---

[11] In a prior case, the undersigned relied upon mailing addresses in discussing § 1332(d)(3)'s class citizenship element. *See Mattingly v. Equal Energy*, No. 10-CV-565, 2011 WL 3320822, at *2 (Aug. 1, 2011) (discussing percentage of royalty interest owners with Oklahoma mailing addresses). However, the element was not disputed in that case, and the parties' briefs focused exclusively on the six-factor test. The Court's decision in *Mattingly* should not be read as taking a position on the use of mailing addresses to prove a disputed element of a CAFA exception.

DENIED. The stay entered by the Court on December 23, 2013 (Doc. 46) is lifted, and the parties are ordered to submit a Joint Status Report no later than fourteen days from the date of this Order.

**IT IS SO ORDERED this 7th day of August, 2014.**

*[signature: Terence Kern]*

**TERENCE KERN**
**United States District Judge**