# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KEVIN JETER,** | ) | |
| **JOE A. JETER,** | ) | |
| **BARBARA LUCAS,** | ) | |
| **JAMES H. MILLER,** | ) | |
| **SHARON RIGSBY MILLER,** | ) | Case No. 12-CV-411-TCK-FHM |
| **LARRY SMITH,** | ) | |
| **JANICE SUE PARKER,** | ) | |
| individually and as Class Representatives | ) | |
| on Behalf of All Similarly-Situated Persons, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BULLSEYE ENERGY INC.,** | ) | |
| **CEP MID-CONTINENT, LLC,** | ) | |
| **KRS&K, an Oklahoma Partnership,** | ) | |
| **GASHOMA, INC.** | ) | |
| **PURGATORY CREEK GAS, INC.,** | ) | |
| **REDBIRD OIL, an Oklahoma Partnership,** | ) | |
| **WILD WEST GAS, LLC,** | ) | |
| **WHITE HAWK GAS, INC.,** | ) | |
| **FOUNTAINHEAD, LLC,** | ) | |
| **ROBERT M. KANE,** | ) | |
| **LOUISE KANE ROARK,** | ) | |
| **ANNE KANE SEIDMAN,** | ) | |
| **MARK KANE,** | ) | |
| **PAMELA BROWN,** | ) | |
| **GARY BROWN,** | ) | |
| | ) | |
| Defendants. | | |
| | | |
| and | | |
| | | |
| **KEVIN JETER,** | ) | |
| **JOE A. JETER,** | ) | Case No. 15-CV-455-TCK-TLW |
| **BARBARA LUCAS,** | ) | |
| **JAMES H. MILLER,** | ) | |
| **SHARON RIGSBY MILLER,** | ) | |
| **LARRY SMITH,** | ) | |
| **JANICE SUE PARKER,** | ) | |
| **JAMES D. ENLOE,** | ) | |
| **CAROLYN R. ENLOE, and** | ) | |

| | |
|---|---|
| SCOTT BAILY,<br>individually and as Class Representatives<br>on Behalf of All Similarly-Situated Persons, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>) |
| CEP MID-CONTINENT, LLC,<br>ROBERT M. KANE,<br>LOUISE KANE ROARK,<br>ANNE KANE SEIDMAN,<br>MARK KANE,<br>PAMELA BROWN, and<br>GARY BROWN, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## OPINION AND ORDER

On September 29, 2017, Plaintiffs' Class Representatives Kevin L. Jeter and Joe Jeter ("Settling Plaintiffs"), filed a Joint Motion for Preliminary Approval of Settlement Agreement with Defendant Bullseye Energy Inc., *et al.*, for Certification of a Settlement Class, and for Approval of Notice of Settlement and Plan of Notice. Doc. 244. On October 20, 2017, Plaintiffs Barbara Lucas, James H. Miller, Sharon Rigsby Miller, Larry Smith, Janice Sue Parker, James D. Enloe, Carolyn R. Enloe and Scott Baily ("Non-Settling Plaintiffs"), filed their Response in Objection to Motion for Preliminary Approval of Settlement Agreement by Non-Moving Parties. Doc. 249. On March 21, 2018, the Court entered an order preliminarily approving class settlement. Doc. 262.

Under the proposed settlement agreement, Defendants would pay $700,000 into a Settlement Account, and would agree to binding changes in their future royalty payment methodology, which the settling parties contend have a present value of at least $810,248.10 to $2,383,843.37, for a total settlement value of between $1,510,248.10 to $3,083,843.37. Doc. 244-

2

1. In exchange, the members of the settlement class would release their claims against Defendants. Additionally, class counsel would seek a fee not in excess of 33 percent of the total recovery, and expert fees and litigation costs of approximately $170,000, leaving a Net Settlement Amount of $485,666.67. *Id*.

On October 12, 2018, Settling Plaintiffs and Defendants filed a Joint Motion for Final Approval of Settlement Agreement. Doc. 287. The Non-Settling Plaintiffs filed a Response in Opposition to the motion, in which they argued that Settling Plaintiffs and Defendants had not met their burden of proof to show that the Settlement Agreement is fair, reasonable and adequate. Doc. 29. They specifically argued that the proposed settlement did not adequately compensate the class members, and—citing *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203, 1205 (Okla. 1998)—they asserted that defendants had been improperly burdening lessors with post-production costs.

**I. Applicable Law**

In the Tenth Circuit, as in other circuits, a class-action settlement is entitled to final approval where it is "fair, reasonable and adequate." *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993). The Tenth Circuit has identified four non-exclusive factors courts must consider in determining whether proposed settlement meets this requirement:

A. Whether the proposed settlement was fairly and honestly negotiated;

B. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

C. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

D. The judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Other relevant factors may include the risk of establishing damages at trial; the extent of discovery and the current

posture of the case; the range of possible settlement; and the reaction of class members to the proposed settlement. *In re N.M. Natural as Antitrust Litig.*, 607 F. Supp. 1491, 1504 (D. Colo. 1984).

**II. Analysis**

**A. Whether the Agreement Was Fairly and Honestly Negotiated**

There is no evidence that the proposed settlement agreement was not honestly negotiated, but substantial questions exist regarding the fairness of negotiations. As an initial matter, the proposed settlement was reached after former class counsel's representation of the eight Non-Settling Named Plaintiffs ended, and the majority of negotiations excluded new counsel for the objectors.

Moreover, the Non-Settling Plaintiffs argue the agreement is not fair, reasonable and adequate because it fails to separate the class into damages or settlement sub-classes for members with deduct leases (*i.e.*, net leases) and those with non-deduct leases (*i.e.*, gross leases).[1] The Non-Settling Plaintiffs argue that the failure to distinguish between gross and net royalty owners is a substantial problem because it would result in over-compensation to net lease holders and under-compensation to gross lease holders. Moreover, the proposed settlement awards the Jeters a $21,000 class representative fee, which Non-Settling Plaintiffs argue is unwarranted. Finally, Non-Settling Plaintiffs contend that the damages analysis upon which the proposed settlement is based is outdated, and that class members are owed at least three additional years of royalty payments for which the damage calculations presented by settling plaintiffs fail to account.

---

[1]Gross leases calculate proceeds based on the sale price without consideration of the post-production costs incurred to get the product to the sales point. In contrast, under net leases, post-production costs are subtracted from the downstream sales price of the product to arrive at the net proceeds price. According to non-settling plaintiffs' expert, the majority of leases in this case are gross leases.

The Court concurs with Non-Settling Plaintiffs that the proposed settlement is not fair, reasonable or adequate for the reasons set forth above.

### B. Whether Serious Questions of Law and Fact Exist

At the fairness hearing, Settling Plaintiffs' expert witness Paul DeMuro, citing *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203 (Okla. 1998), testified there was a risk plaintiffs would lose on the merits based on marketability issues.[2] Specifically, he opined that (1) pursuant to *Mittlestaedt*, if the gas was found to be marketable at the wellhead, defendants would be entitled to recover the costs at issue from net lessors, (2) a finder of fact would conclude the costs charged by the producers were reasonable, and (3) as a result, there would be no recovery for the plaintiffs. Doc. 296 at 124-126, 129-130.[3] DeMuro also testified that in light of recent Tenth Circuit opinions, there was "a very real risk" that the District Court might not certify a class, and even if it did, the Tenth Circuit would likely "take[] a different view." *Id.* at 129-130.

However, a recent Tenth Circuit decision calls into question DeMuro's evaluation of both the merits of the case and the likelihood of class certification surviving on appeal. In *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 784 (10th Cir. 2019), the appellate court concluded that the district court did not abuse its discretion in certifying a class of both net lessors

---

[2] In *Mittelstaedt*, the Oklahoma Supreme Court held that an oil and gas lessee who was obligated to pay "3/16 of the gross proceeds received for the gas sold" to net lessors was entitled to deduct a proportional share of transportation, compression, dehydration, and blending costs from the royalty interest paid to the lessor if the lessee could show (1) that the costs enhanced the value of an already marketable product, (2) that such costs are reasonable, and (3) that actual royalty revenues increased in proportion with the costs assessed against the nonworking interest. *Id.* at 1205.

[3] The Court notes, though, that according to the Non-Settling Plaintiffs' expert, the majority of leases in this case are gross leases, and Defendants would not be entitled to deduct costs from payments to those lessors. Doc. 276-2, Patrick Martindale Affid.

and gross lessors because the question of whether the defendant breached the implied duty of marketability ("IDM") was a common question and this and other common questions predominated over any individual ones.[4]

Accordingly, the Court concludes that questions of law and fact are not so insurmountable that Plaintiffs are likely to lose on the merits of their claims.

### C. Whether the Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief

Pursuant to the proposed Settlement Agreement, up to 30 percent of settlement proceeds—$210,000—is earmarked to pay class counsel's attorneys' fees, including payments to attorneys who withdrew from the case and attorneys who—Non-Settling Plaintiffs argue—refused to adequately fund the litigation.[5] Additionally, litigation costs of up to $170,000 and a class representative fee of $21,000 would be deducted.

After deduction of these costs, a net settlement fund of only $199,000 would remain to be divided among Settling Plaintiffs. Furthermore, although Defendant Bullseye has threatened to file for bankruptcy if the case continues, 14 other Defendants remain in the case, and no admissible

---

[4] The appellate court observed that the district court recognized differences in the precise gathering, dehydrating, transporting and producing ("GDTP") services required to make the gas from each well marketable "are relevant only to the post-breach question of damages," because Naylor Farms provided evidence that its expert could determine damages on a class-wide basis through use of a model, the district court ruled these distinctions did not defeat predominance. *Id.* at 790. It also noted the district court had pointed out that, if necessary, it could divide the class into subclasses at a later date for purposes of determining damages pursuant to Fed. R. Civ. P. 23(c)(1)(C) and/or (c)(5). The Court acknowledges that a similar approach might be feasible in this case.

[5] In its March 21, 2018 Order Preliminarily Approving Class Settlement, the Court preliminarily approved class counsel's motion for attorney fees, and litigation expenses from the Settlement Proceeds, with the following limitations: (1) the attorneys' fee to be awarded to Class Counsel will not exceed 30 percent of the Settlement Proceeds; and (2) only one Class Representative award, not greater than $21,000, may be awarded. Doc. 262 at 2-3.

evidence concerning their economic condition has been introduced. Therefore, the Court is not convinced that the value of an immediate recovery outweighs the possibility of future relief.

### D. Judgment of the Parties that Settlement is Fair and Reasonable

"When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. State of Kansas, Dept. of Revenue*, 209 F. Supp.2d 1179, 1182 (D. Kan. 2002). This case, though, is aberrant in that only two of the ten named Plaintiffs support the proposed settlement. The remaining eight named Plaintiffs engaged new counsel and have vigorously opposed the settlement, arguing that it forces together two distinct classes of lease holders—those with deductible or net leases and those with non-deductible or gross leases. Moreover, some 70 objections were filed by other Plaintiffs.

As previously noted, Settling Plaintiffs' expert, DeMuro, testified he believed the proposed settlement was fair and reasonable because: (1) it was questionable whether Plaintiffs would prevail on the merits; (2) even if the district court certified a class, there was a significant risk the Tenth Circuit would overturn the class certification and (3) even assuming Plaintiffs ultimately prevailed, there were issues with collectability of a damages award.

However, in light of *Naylor*, the Court concludes that Plaintiffs' chances of prevailing on the merits have improved considerably, as has the likelihood that class certification, if properly structured, would withstand appellate review. And although Defendant Bullseye has threatened to file for bankruptcy if the case continues, 14 other Defendants remain in the case, and no admissible evidence concerning their economic viability has been introduced. Therefore, the Court is not convinced that the value of an immediate recovery outweighs the possibility of future relief.

Moreover, Non-Settling Plaintiffs strenuously object to the proposed class certification and settlement, arguing, *inter alia*, that:

- the settlement, which was negotiated by Defendants and only two of the ten named Plaintiffs, would result in modification of the terms of the leases of every class member, allowing Defendants to deduct future expenses from net and gross lessors alike;

- the proposed settlement would actually increase the amount deducted from the royalties due to class members from $0.97 or 30 percent—whichever was less—to 45 percent;

- the proposed settlement did not adequately compensate plaintiffs for the years of impermissible deductions from their royalties, which, as of 2014, were calculated to be $4,107,212.50, plus an additional $2,536,11371 owed in statutory interest through 2015, for a total of $6,643,326.21;

- the proposed settlement does not adequately compensate those whose wells were depleted and/or are no longer producing;

- of the ten named plaintiffs, only two—the Jeters—have agreed to the proposed settlement, which was negotiated by the Jeters' attorney, Robert Burton, after Burton's representation of the eight objecting plaintiffs ended;

- the proposed settlement seeks to give preferential treatment to the Jeters, who have done nothing to warrant different treatment from the other named plaintiffs.

The Court finds merit in the Non-Settling Plaintiffs' arguments. In particular, the Court concludes that the settling plaintiffs have failed to carry their burden to show that the settlement is fair, inasmuch as it does not account for the differences between gross and net lessors.

### III. Conclusion

Based on the Tenth Circuit's ruling in *Naylor Farms*, the overwhelming number of Non-Settling and Objecting Plaintiffs, the failure of the settlement agreement to account for differences between net leases and non-deduct leases, the Court concludes that the Joint Motion for Final Approval of Settlement Agreement, Doc. 287, must be denied.

ENTERED this 22nd day of June, 2019.

*Terence C. Kern*
TERENCE C. KERN
United States District Judge