# 𝔘nited 𝔖tates 𝔇istrict 𝔠ourt

## for the 𝔑orthern 𝔇istrict of 𝔒klahoma

Case No. 12-cv-411-JDR-CDL

CONSOLIDATED WITH

Case No. 15-cv-455-JDR-JFJ

KEVIN L. JETER; JOE A. JETER; BARBARA LUCAS; JAMES H. MILLER; SHARON RIGSBY MILLER; LARRY SMITH; JANICE SUE PARKER,

*Plaintiffs,*

*versus*

WILD WEST GAS, LLC; WILD WEST GAS, INC.; BULLSEYE ENERGY, LLC; FOUNTAINHEAD, LLC; KRS&K; CEP MID-CONTINENT, LLC; ROBERT M. KANE; LOUISE KANE ROARK; ANN KANE SEIDMAN; MARK KANE; PAMELA BROWN; GARY BROWN; GASAHOMA, INC.; PURGATORY CREEK GAS, INC.; REDBIRD OIL; WHITE HAWK GAS, INC.,

*Defendants.*

— *and* —

KEVIN L. JETER; JOE A. JETER; BARBARA LUCAS; JAMES H. MILLER; SHARON RIGSBY MILLER; LARRY SMITH; JANICE SUE PARKER; JAMES D. ENLOE; CAROLYN R. ENLOE; SCOTT BAILY,

*Consolidated Plaintiffs,*

*versus*

CEP MID-CONTINENT, LLC; ROBERT M. KANE; LOUISE KANE ROARK; ANN KANE SEIDMAN; MARK *Kane*; PAMELA BROWN; GARY BROWN,

*Consolidated Defendants.*

## OPINION AND ORDER

12-cv-411
c/w 15-cv-455

The history of this case is long and complicated; the motions for summary judgment filed by six of the Defendants are not. Defendants Gary and Pamela Brown [Dkt. 473], KRS&K, LLC [Dkt. 474], Louise Kane Roark, Ann Kane Seidman, and Mark Kane (the "Kane Siblings")[1] [Dkt. 475] argue that Barbara Lucas, James Miller, Sharon Rigsby Miller, Larry Smith, Janice Sue Parker, James D. Enloe, Carolyn Enloe, and Scott Baily[2] cannot present any evidence that would allow them to obtain relief on any of the claims asserted against the Browns, KRS&K, or the Kane Siblings. For the reasons set forth below, the Court agrees and grants these Defendants' motions. Dkts. 473, 474, 475.

I

Summary judgment is only appropriate if there is "no genuine dispute as to any material fact" that would permit a jury to find in favor of the non-moving party. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, this Court must resolve all factual disputes in favor of the non-moving parties and draw all reasonable inferences in their favor. *See McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018).

It is the moving party's burden to establish that summary judgment is appropriate as a matter of law. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). Defendants can satisfy this burden by pointing to the absence of sufficient evidence to support one or more elements essential to Plaintiffs' claims. *Id.* If they do so, then Plaintiffs must respond with specific facts showing that there is a genuine dispute "as to those dispositive matters

---

[1] Defendant Robert Kane has filed a separate motion for summary judgment. For purposes of this opinion, the term "Kane Siblings" refers only to Mark Kane, Louise Kane Roark, and Ann Kane Seidman.

[2] On June 27, 2025, Plaintiffs Kevin and Joe Jeter stipulated to the dismissal of their claims against the remaining Defendants. Dkt. 498.

12-cv-411
c/w 15-cv-455

for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). Plaintiffs cannot rest on mere arguments or allegations; instead, they must identify the facts that create a genuine dispute by referring to affidavits, depositions, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

Plaintiffs' pro se status does not affect their obligation to comply with Rule 56. Although this Court construes pro se litigants' pleadings liberally, *see Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994), a pro se litigant, like every other litigant, must comply with the Federal Rules of Civil Procedure and the local rules of this Court. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (recognizing that pro se parties must "follow the same rules of procedure that govern other litigants" (citation and quotation marks omitted)); N.D. Okla. Civ. R. 17.1(d) (requiring pro se parties to "comply with all local rules and applicable federal rules"). Accordingly, the Court will not assume the role of Plaintiffs' advocate, create arguments on Plaintiffs' behalf, or search the record for evidence not cited by Plaintiffs that would support their claims. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

II

The Court turns first to Defendants Gary and Pamela Brown's motion for summary judgment. The only claims currently pending against the Browns charge them with violating the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(c). *See* Dkts. 152 at 24-31; 480; 486.[3] These claims are premised upon the following allegations: Plaintiffs own mineral interests in land located within the jurisdiction of the Northern District of Oklahoma. They entered into lease agreements with Defendant Bullseye Energy,

---

[3] *See also* No. 4:15-cv-455-JDR-JFJ, Dkt. No. 2 at 25-33.

3

12-cv-411
c/w 15-cv-455

Inc. and other entities. *See* Dkt. 473-1 at 3.[4] Under those agreements, Bullseye and other entities, as lessees, agreed to collect gas from Plaintiffs' wells and pay Plaintiffs a royalty based upon the price received when the gas was sold. Plaintiffs allege that the royalty payments received under the agreements were artificially deflated because Defendants Robert Kane, Gary Brown, and Pamela Brown took unauthorized deductions from the royalties due to Plaintiffs, issued and mailed checks and check stubs showing no deductions were taken from the royalty amount (even though, according to Plaintiffs, deductions were taken), and used mail and wire communications to receive payments for gas and then transmit artificially reduced royalties to Plaintiffs. *See* Dkt. 154 at ¶¶ 117-135. Plaintiffs allege Mr. Kane and the Browns did all of this while conducting and participating in a RICO enterprise consisting of Bullseye Energy, Wild West Gas, LLC, White Hawk Gas, Inc., Bullseye Operating, LLC, Gasahoma, Inc., Purgatory Creek Gas, Inc., and New Cotton Valley Gas Transmission, LLC. *See id.*

Plaintiffs cannot rest on these allegations. To prevail at trial, Plaintiffs must present evidence that the Browns: (1) conducted or participated in the conduct of (2) an enterprise engaged in or affecting interstate or foreign commerce (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a)-(c)). The first element requires proof that the defendant had "some part in directing the affairs of the enterprise," while the fourth requires proof that the defendant engaged in "racketeering activity," which is defined to include mail fraud and wire fraud. *Id.* at 1261, 1269 (citations omitted). *See* 18 U.S.C. § 1961(1)(B). Both of these elements must be established with respect to each defendant alleged to have violated § 1962(c). *E.g., BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (affirming summary judgment where the

---

[4] The ownership interests in the leases at issue in this case have changed over time. *See* Dkt. 473-1 at 3-4.

12-cv-411
c/w 15-cv-455

plaintiffs had failed to establish that "the Title Companies participated in the conduct of the alleged RICO enterprise" (quotation marks omitted)); *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 1:23-cv-00903 KWR/JFR, 2025 WL 872972, at *22 (D.N.M. Mar. 19, 2025) (recognizing that, to establish liability under 1962(c), a plaintiff must show that the defendant itself committed two or more predicate acts).

The Browns assert that there is no evidence to support the first and fourth elements of Plaintiffs' RICO claims. Pamela Brown has introduced testimony demonstrating that, although she was employed by Bullseye Operating, LLC and provided accounting services for some of the defendant entities, she was never involved in any decisions or activities regarding the calculation or payment of royalties and never prepared or reviewed any royalty checks. Dkt. 473 at 8; Dkt. 473-1 at 14-15; Dkt. 473-2 at 3-5. She never gave any approval for or opinion on any royalty check, check stub, or the language included on any royalty check or stub sent to a royalty owner. Dkt. 473-1 at 14. She did occasionally sign checks on behalf of Mr. Kane and she delivered checks to the post office when no one else was available to do so, but this was not a normal part of her job duties. Dkt. 473-1 at 15; Dkt. 473-2 at 3-4. And she asserts there is no evidence that she ever signed or delivered any checks that give rise to Plaintiffs' allegations of mail fraud. Dkt. 473 at 8.

Gary Brown also presented evidence that he never gave any opinion on or approved any royalty check, check stub, or language used on any check or stub that was sent to a royalty owner. Dkt. 473-4 at 3-4. Although he was employed by Bullseye Operating and provided services for some of the companies named in the alleged RICO enterprise, his services pertained to obtaining leases, acquiring easements, obtaining permits, staking locations, purchasing equipment, engaging subcontractors, reviewing vendor invoices, and performing office services. Dkt. 473 at 9; Dkt. 473-4 at 3. He never made any decisions regarding royalty calculations or payment decisions, never

12-cv-411
c/w 15-cv-455

calculated royalties due to Plaintiffs, and never prepared any royalty checks or check stubs. Dkt. 473 at 9; Dkt. 473-4 at 3-5. He did sign royalty checks on occasion when Mr. Kane could not, but he did not prepare or review the checks prior to signing them. Dkt. 473 at 9. And neither he nor Ms. Brown was ever consulted with respect to the allegedly deceptive language that was sent to Plaintiffs or otherwise gave any opinion on or approval of that language. Dkt. 473 at 9.

By introducing the evidence above, the Browns satisfied their preliminary burden of pointing to the absence of evidence to support two of the four essential elements of Plaintiffs' RICO claims. *See Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010). Because they have done so, it falls to Plaintiffs to "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [they carry] the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). After reviewing Plaintiffs' response and the evidence they cite, the Court concludes that the Plaintiffs have failed to satisfy this obligation. Plaintiffs have alleged virtually no facts demonstrating that either Gary or Pamela Brown engaged in racketeering activity: They have not pointed to any specific acts of wire or mail fraud engaged in by these Defendants; they have not presented any evidence refuting the Browns' assertions that they played no role in making, reviewing, or approving the allegedly deceptive statements made to Plaintiffs or anyone else; and they have not pointed to any specific acts that either Gary or Pamela Brown took to direct the affairs of the alleged enterprise.

Plaintiffs suggest that the Browns must have known of and participated in a RICO scheme by virtue of their roles as employees. But that suggestion is not supported by any concrete evidence. The whole of Plaintiffs' discussion of the Browns' misconduct consists of conclusory statements that the Browns "joined" other Defendants as employees, worked for a shell company created by Robert Kane, "devised a scheme" to defraud royalty owners

6

12-cv-411
c/w 15-cv-455

while acting as "accessories-in-fact" with knowledge of the "inner workings" of the RICO enterprise, and sold gas through New Cotton Valley Gas Transmission, LLC. Dkt. 484 at 4, 14, 15, 16, 19. These unsupported statements are conclusions, not evidence, and they do not suffice to create a triable issue of fact on (1) whether the Browns conducted or participated in the conduct of a RICO enterprise, or (2) whether the Browns engaged in racketeering activity.

Although it was not required to do so, the Court searched the evidence attached to Plaintiffs' response for any reference to the word "Brown." The references relevant to the Brown Defendants are thin,[5] and they fail to provide any evidence from which a jury could find that either Gary or Pamela Brown engaged in specific acts of mail or wire fraud or directed the affairs of the RICO enterprise. To the contrary, the evidence suggests that the Browns engaged in ordinary business transactions such as negotiating leases, conveying information, and making purchases, and that they primarily took their directions from Mr. Kane when doing so. *See* Dkt. 484-4 at 39-40, 63-65, 77, 87-88, 106-108, 135; Dkt. 484-8; Dkt. 484-10 at 38. The Court cannot identify any evidence in Plaintiffs' supporting documentation that would permit a jury to make the findings necessary to rule in Plaintiffs' favor with respect to their RICO claims against the Browns. Accordingly, the Court grants Gary and Pamela Brown's motion for summary judgment. Dkt. 473.

### III

The Court next considers the motion filed by Defendant KRS&K, LLC. Dkt. 474. Plaintiffs assert claims of breach of contract and fraud against KRS&K. Dkt. 154 at 14-15, 20-21; Dkt. 480 at 6-7.[6] Plaintiffs allege that

---

[5] Many of the references identified by the Court referred to attorney Ron Brown and another lawyer. Dkts. 484-9, 484-10, 484-12, 484-14. Others were references to the Brown Defendants made by this Court in prior rulings. Dkt. 484-11.

[6] Plaintiffs also seek an accounting of all royalties due to them under their leases. Dkt. 154 at 21-22; Dkt. 480 at 6-7. Because KRS&K does not move for summary judgment
*(footnote continues)*

12-cv-411
c/w 15-cv-455

KRS&K had a contractual obligation to pay royalties due under the Plaintiffs' lease agreements and failed to do so. Dkt. 154 at 14-15. They further allege that KRS&K, like the Browns, concealed unlawful deductions and expenses that were improperly deducted from the royalty payments made to Plaintiffs, engaged in self-dealing to artificially deflate the payments made to Plaintiffs, and concealed facts pertaining to the actual amounts that should have been paid to Plaintiffs. *See id.* at 20-21.

KRS&K argues that there are no facts that would permit a jury to find in Plaintiffs' favor with respect to any of the claims asserted against it. In support of its argument, KRS&K presents evidence that it held an interest in leases with Plaintiffs prior to May 5, 1999. Dkt. 474 at 3. On that date, however, KRS&K transferred all of its oil and gas leases with Plaintiffs to Bullseye Energy, Inc. *Id.* This transfer took place before any gas was produced by any of the associated oil and gas wells, before any royalty payments were made under the terms of any of those leases, and before any representations were made to Plaintiffs concerning the deductions (or lack thereof) taken from the payments made under the leases. *Id.* at 3-5. KRS&K has submitted evidence of the May 5, 1999 transfer of interest, as well as evidence that it had no role whatsoever with respect to any lease, royalty payment, or representation made to any Plaintiff during the period when gas was produced under Plaintiffs' leases. *Id.*; Dkt. 474-1 at 4, 14-15, 19; Dkt. 474-4 at 3; Dkt. 474-5 at 3. KRS&K contends that Plaintiffs cannot establish the essential elements of its claims, and that any claims Plaintiffs might have had prior to May 5, 1999, are time-barred. Dkt. 474 at 6-11.

---

on this claim, KRS&K will remain in the case following the entry of this order. *See Cell Energy, LLC v. Devon Energy Prod. Co., L.P.*, No. 16-188 GJF/LAM, 2016 WL 9408580, at *4 (D.N.M. Oct. 11, 2016) (citing *Margaret Blair Tr. v. Blair*, 2016 OK CIV APP 47, ¶¶ 16-22, 378 P.3d 65, 72-74) (recognizing the existence of multiple types of accounting claims under Oklahoma law, three of which constitute separate causes of action).

12-cv-411
c/w 15-cv-455

Plaintiffs have failed to identify any evidence demonstrating that a genuine question of fact exists with respect to their claims against KRS&K. In their response, Plaintiffs broadly allege that KRS&K has an ownership interest in the companies involved in the production, compression, and sale of the gas from Plaintiffs' wells [Dkt. 484 at 4],[7] "meet[s] the . . . criteria" for engaging in racketeering activity to control a RICO enterprise [*id.* at 16], and engaged in financial transfers that were later called into question during a bankruptcy proceeding [*id.* at 21]. None of these allegations or conclusions call into question or raise a genuine dispute concerning KRS&K's factual averments. And the evidence attached to Plaintiffs' brief likewise fails to dispute KRS&K's evidence that it has not been involved in or associated with Plaintiffs, their leases, the royalty payments made under the leases, or the representations made to Plaintiffs since 1999. *See* Dkt. 484-1; Dkt. 484-2; Dkt. 484-4 at 11, 14, 23-34, 59-60, 111-119;[8] Dkt. 484-9 at 50-54 (discussion of funds advanced by KRS&K to Bullseye Energy in a bankruptcy proceeding); Dkt. 484-10 at 56 (describing ownership of entities); Dkt. 484-15 at 5(concluding KRS&K's ownership consists of the same individuals that own the debtor company in bankruptcy proceeding).

The Court has reviewed the record and concludes that Plaintiffs have failed to point to facts that, if true, would permit a jury to find in their favor

---

[7] Plaintiffs point to their first, second, and tenth exhibits in support of their contention that KRS&K has an ownership interest in other defendant entities. See Dkt. 484 at 4. But the referenced exhibits fail to demonstrate KRS&K's ownership of all or part of any other entity. *See* Dkt. 484-1 (assignment of oil and gas leases by KRS&K); Dkt. 484-2 (assignment of oil and gas leases by Robert Kane and the Kane Siblings to Bullseye Energy, Inc.); Dkt. 484-10 at 61-64 (describing ownership of entities by Robert Kane, the Kane Siblings, and others).

[8] There is evidence that KRS&K retained some interest in a small number of leases, but there is no evidence refuting KRS&K's claim that it assigned all leases related to *Plaintiffs'* wells in May 1999. *See* Dkt. 484-4 at 32-34 (indicating KRS&K may have retained an interest in "a few wells" on land owned by the Kane family).

12-cv-411
c/w 15-cv-455

with respect to their claims against KRS&K. There is no evidence that KRS&K breached any of the contractual obligations it owed to Plaintiffs prior to May 5, 1999, *see Morgan v. State Farm Mut. Auto Ins. Co.*, 2021 OK 27, ¶ 21, 488 P.3d 743, 748 (setting forth elements of a breach-of-contract claim), and even if Plaintiffs had pointed to a breach of those obligations, they have failed to refute KRS&K's contention that their claims for relief are barred by Oklahoma's five-year statute of limitations, *see* Okla. Stat. tit. 12 § 95(A)(1). There is no evidence of any contract between KRS&K and any Plaintiff that post-dates 1999, nor is there any evidence of that KRS&K itself has made any false material statements to Plaintiffs, which is a required element of Plaintiffs' fraud claim. *See Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218 (setting forth the four elements of fraud under Oklahoma law).[9] No jury could find against KRS&K in the absence of such evidence. Accordingly, KRS&K's motion for summary judgment is granted.

## IV

The Court now turns to the Kane Siblings' motion for summary judgment on Plaintiffs' claim that they violated § 1962(d) of the Racketeer Influenced and Corrupt Organization Act. *See* Dkts. 152 at 32-35; 480, 486.[10] Section 1962(d) makes it illegal "for any person to conspire to violate any of the

---

[9] To the extent Plaintiffs intend their fraud claim to seek relief against KRS&K under a veil-piercing or alter-ego theory of liability, the Court concludes that Plaintiffs have failed to present evidence or argument that the corporate structure of any entity should be disregarded. Accordingly, the Court must give effect to the general rule that individuals and corporations are distinct legal entities. *See Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶ 10, 894 P.2d 1077, 1079–1080. This does not, however, preclude Plaintiffs from seeking recovery under a veil-piercing theory in a separate collection action if they are ultimately successful in pursuing their claims against another, related entity. *See Lifetouch Nat'l Sch. Studios Inc. v. Oklahoma Sch. Pictures, LLC*, 2024 OK CIV APP 17, ¶¶ 22-26, 554 P.3d 764, 772–73, reh'g denied (Mar. 27, 2024) (recognizing that the "alter ego remedy can also be employed in a separate action to collect, from one company, a judgment obtained in previous litigation against another company").

[10] *See also* No. 4:15-cv-455-JDR-JFJ, Dkt. No. 2 at 33-37.

12-cv-411
c/w 15-cv-455

provisions of subsection (a), (b), or (c) of [§ 1962]." 18 U.S.C. § 1962(d). Thus, to establish a violation of § 1962(d), Plaintiffs must present evidence that would permit a jury to conclude that the Kane Siblings conspired to: use income derived from racketeering activity to invest in, acquire, or establish a RICO enterprise in violation of subsection (a); acquire or maintain an interest in or control of a RICO enterprise through a pattern of racketeering activity in violation of subsection (b); or conduct or participate in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity in violation of subsection (c). *See* 18 U.S.C. § 1962. If Plaintiffs "[have] no viable claim under § 1962(a), (b), or (c), then [their] subsection (d) conspiracy claim fails as a matter of law." *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006).

The Kane Siblings argue that there is no evidence to permit a jury to find that they participated in either a conspiracy to violate RICO or an underlying RICO violation. They, like the Browns, present evidence that they had little if any involvement in the leases and entities at issue in this case. They describe themselves as "passive investors" who had minimal involvement in KRS&K, Bullseye Energy, or any other entity involved with the gas produced under Plaintiffs' leases. Dkt. 475 at 4-6. Ms. Roark and Ms. Seidman deny that they were consulted with respect to or approved any royalty check, stub, or language contained on any check or stub sent to Plaintiffs. Dkt. 475 at 6-7; Dkt. 475-3; Dkt. 475-4. Mark Kane presented evidence that he was not consulted with the asterisked language that appears on any check stub, never approved that language, and took no part in the decision to add that language to Plaintiffs' checks. Dkt. 475 at 7; Dkt. 475-5. None of the Kane Siblings calculated royalties or prepared any royalty checks for Plaintiffs, mailed or participated in the mailing of any royalty checks or check stubs to Plaintiffs, or agreed to participate in a scheme to defraud Plaintiffs by engaging in any racketeering acts. Dkt. 475 at 7-8; Dkt. 475-3; Dkt. 475-4; Dkt. 475-5.

12-cv-411
c/w 15-cv-455

The evidence recited above is sufficient to call into question whether a jury could find that the Kane Siblings violated subsections (a), (b), or (c) of § 1962 or conspired to do so. *See BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (granting summary judgment on § 1962(d) conspiracy claim where the underlying § 1962(c) claim was held to be without merit). And Plaintiffs fail to respond with evidence that could permit a jury to find in their favor: In their brief, Plaintiffs argue only that the Kane Siblings formed KRS&K and, with others, meet the criteria for an association-in-fact enterprise. Dkt. 484 at 4, 16. They point to no evidence that, if true, would permit a jury to conclude that the Kane Siblings engaged in racketeering activity, used income derived from racketeering activity to invest in or acquire an interest in a RICO enterprise, maintained an interest or control of a RICO enterprise, conducted or participated in the conduct of a RICO enterprise, or conspired to do any of the foregoing. *See* 18 U.S.C. § 1962(a)-(d). And the Court has independently searched for the names Roark, Seidman, and Mark in the documents attached to Plaintiffs' response and found nothing that would permit a jury to conclude that those individuals engaged in racketeering activity, violated subsections (a) through (c) of § 1962 or conspired to do so. *See* Dkt. 484-2; 484-4 at 14, 26-28, 138; 484-9 at 17-18, 23-27, 54-55; Dkt. 484-10 at 51-62; Dkt. 484-11. Plaintiffs have failed to point to any evidence that would permit a jury to find in their favor with respect to their RICO claims against the Kane Siblings and, consequently, the Kane Siblings are entitled to summary judgment.

## VI

For the reasons set forth above, Plaintiffs have failed to establish that a genuine issue of material fact exists with respect to any of their claims against the Browns, KRS&K, or the Kane Siblings. Accordingly, the Court grants the motions for summary judgment filed by Defendants Gary and Pamela Brown [Dkt. 473], KRS&K [Dkt. 474], and Mark Kane, Louise Kane

12-cv-411
c/w 15-cv-455

Roark, and Ann Kane Seidman [Dkt. 475]. Plaintiffs' claims against Gary and Pamela Brown and the Kane Siblings are fully resolved by virtue of this order. KRS&K remains a Defendant in this case with respect to Plaintiffs' claim for an accounting, the only claim against KRS&K that survives this order.

DATED this 1st day of July 2025.

JOHN D. RUSSELL
*United States District Judge*