# United States District Court
## for the Northern District of Oklahoma

Case No. 12-cv-411-JDR-CDL
CONSOLIDATED WITH
Case No. 15-cv-455-JDR-JFJ

KEVIN L. JETER; JOE A. JETER; BARBARA LUCAS; JAMES H. MILLER; SHARON RIGSBY MILLER; LARRY SMITH; JANICE SUE PARKER,

*Plaintiffs,*

versus

WILD WEST GAS, LLC; WILD WEST GAS, INC.; BULLSEYE ENERGY, LLC; FOUNTAINHEAD, LLC; KRS&K; CEP MID-CONTINENT, LLC; ROBERT M. KANE; LOUISE KANE ROARK; ANN KANE SEIDMAN; MARK KANE; PAMELA BROWN; GARY BROWN; GASAHOMA, INC.; PURGATORY CREEK GAS, INC.; REDBIRD OIL; WHITE HAWK GAS, INC.,

*Defendants.*

— and —

KEVIN L. JETER; JOE A. JETER; BARBARA LUCAS; JAMES H. MILLER; SHARON RIGSBY MILLER; LARRY SMITH; JANICE SUE PARKER; JAMES D. ENLOE; CAROLYN R. ENLOE; SCOTT BAILY,

*Consolidated Plaintiffs,*

versus

CEP MID-CONTINENT, LLC; ROBERT M. KANE; LOUISE KANE ROARK; ANN KANE SEIDMAN; MARK KANE; PAMELA BROWN; GARY BROWN,

*Consolidated Defendants.*

OPINION AND ORDER

12-cv-411
c/w 15-cv-455

Plaintiffs Barbara Lucas, James Miller, Sharon Rigsby Miller, Larry Smith, Janice Sue Parker, James D. Enloe, Carolyn Enloe, and Scott Baily[1] own mineral interests in property located within the Northern District of Oklahoma. They (or their predecessors) entered into leases authorizing Bullseye Energy and CEP (or their predecessors) to mine and operate oil and gas wells on their respective properties. In exchange, Plaintiffs were to be paid a royalty for any gas produced, sold, or used under the leases.

Plaintiffs claim that Defendants Bullseye Energy, LLC and CEP Mid-Continent, LLC underpaid Plaintiffs in violation of their contractual obligations and engaged in fraud by misrepresenting and concealing information that would have alerted Plaintiffs to the underpayment. *See* Dkt. 480 at 6; Dkt. 486.[2] They also allege that CEP and Robert Kane—who played a prominent role in CEP, Bullseye Energy, and other entities named in this lawsuit—violated the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962, by conducting or participating in the conduct of a RICO enterprise or conspiring to do so. Dkt. 480 at 7; Dkt. 486.[3] Defendants Bullseye Energy [Dkt. 471], Robert Kane [Dkt. 472], and CEP [Dkt. 476] have filed motions

---

[1] On June 27, 2025, Plaintiffs Kevin and Joe Jeter stipulated to the dismissal of their claims against the remaining Defendants. Dkt. 498.

[2] All citations utilize CMECF pagination.

[3] Plaintiffs seek an accounting by Defendants Bullseye Energy and CEP for all royalties due to them under their leases. Dkt. 480. Those parties did not request summary judgment on the accounting claims, which survive this order. *See Cell Energy, LLC v. Devon Energy Prod. Co., L.P.*, 2016 WL 9408580, at *4 (D.N.M. Oct. 11, 2016) (citing *Margaret Blair Tr. v. Blair*, 2016 OK CIV APP 47, ¶¶ 16-22, 378 P.3d 65, 72) (recognizing the existence of multiple types of accounting claims under Oklahoma law, three of which constitute separate causes of action).

12-cv-411
c/w 15-cv-455

for summary judgment[4] arguing that Plaintiffs cannot present any evidence that would allow them to prevail at trial.

For the reasons set forth below, the Court finds that, although Plaintiffs have failed to present evidence to permit their RICO claims to proceed, disputed questions of fact remain with respect to Plaintiffs' breach-of-contract and fraud claims. Accordingly, the Court denies Bullseye Energy's motion [Dkt. 471] and grants Mr. Kane's motion [Dkt. 472]. CEP's motion [Dkt. 476] is granted with respect to Plaintiffs' RICO claims and denied in all other respects.

I

Summary judgment is proper where there are no genuine factual disputes that would permit a jury to find in favor of the non-moving party. Fed. R. Civ. P. 56(a). A defendant moving for summary judgment bears the initial burden of showing that summary judgment is appropriate by pointing to facts that defeat the plaintiff's claims or by pointing to the absence of any evidence that could support one or more essential elements of those claims. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). Once a moving party satisfies this initial burden, the non-moving party must respond with facts demonstrating a genuine dispute "as to those dispositive matters for which it carries the burden of proof." *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). The non-moving party cannot rely on arguments or allegations to meet this burden, but must specifically identify evidence such as affidavits, depositions, or exhibits that create a genuine dispute for trial. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The Court, viewing all evidence and drawing all reasonable inferences in favor of

---

[4] Defendants Gary Brown, Pamela Brown, KRS&K, LLC, Louise Kane Roark, Ann Kane Seidman, and Mark Kane have also filed motions for summary judgment. Dkts. 473, 474, 475. Those motions are addressed by a separate order [Dkt. 500].

the non-moving parties, must then determine whether the facts, if accepted, would permit a jury to find for the non-moving parties. *See McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). If so, summary judgment is improper.

The Plaintiffs in this case are proceeding pro se, and the Court will construe their pleadings liberally. *See Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). But the Court will not assume the role of Plaintiffs' advocate, create arguments on Plaintiffs' behalf, or search the record for evidence to support Plaintiffs' claims. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Plaintiffs are obliged to comply with the Federal Rules of Civil Procedure and the local rules of this Court—including their obligations under Federal Rule 56(c)—notwithstanding their pro se status. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (recognizing that pro se parties must "follow the same rules of procedure that govern other litigants" (citation and quotation marks omitted)); N.D. Okla. Civ. R. 17.1(d) (requiring pro se parties to "comply with all local rules and applicable federal rules").

## II

The Court begins with Plaintiffs' claim that Bullseye Energy and CEP breached the obligations they owed to Plaintiffs under their respective oil and gas leases. The undisputed facts pertinent to the breach-of-contract claims are as follows:[5] Each of the Plaintiffs owns interests in one or more oil and gas wells. Dkt. 471 at 8. Between approximately 1998 and 2004, Plaintiffs or their predecessors-in-interest executed oil and gas leases with several different entities. Dkt. 472-1 at 31-44. From 2007 until 2017, Bullseye Energy and CEP collectively held one hundred percent of the interest in the wells associated

---

[5] Plaintiffs have failed to directly dispute any of the allegations recited in this section. *See* Fed. R. Civ. P. 56(c). Accordingly, the Court considers these facts undisputed for purposes of this order. Fed. R. Civ. P. 56(e)(2).

12-cv-411
c/w 15-cv-455

with those leases.[6] The leases uniformly provide that CEP and/or Bullseye Energy, as lessees, would pay Plaintiffs a monthly royalty based upon the amount of money "received by the lessee." *Id.*

The wells on Plaintiffs' properties were operated by Bullseye Operating, LLC, and connected to a gathering system formerly owned by Wild West Gas, LLC.[7] Dkt. 471 at 8. Wild West, under contract with Bullseye Operating, purchased gas at the wellhead from the Plaintiffs' wells. Wild West then issued royalty checks to Plaintiffs on behalf of the lessees (Bullseye Energy and CEP). *Id.* The gas was accepted by Wild West without any treatment or processing. *Id.* at 9. After gathering the gas from Plaintiffs' wells and other sources, *id.* at 8-9, Wild West delivered the blended gas stream to New Cotton Valley Gas Transmission, LLC, a co-op made up of seven member entities. *Id.* at 9. Cotton Valley sold gas from the combined stream to various purchasers and issued payments to its members based upon the weighted average cost it received from the sales. *Id.* at 10.

The parties' primary dispute arises out of the payments made by Wild West to Bullseye Energy and CEP: Prior to 2004, Wild West paid Bullseye Energy and CEP's predecessors an amount equal to the weighted average

---

[6] Prior to 1999, Defendant KRS&K, LLC, possessed a fifty percent interest in the wells, while K&E Field Services, Inc. possessed the remaining interest. Dkt. 471-1 at 3-4. In 1999, KRS&K transferred its entire interest in the wells to Bullseye Energy. K&E's interest was divided between K&E and Fountainhead, LLC in November 1999, and then reunited following sales to Oklahoma Processing EQR, LLC in 2006. *Id.* at 3. Oklahoma Processing sold its interest in the wells to CEP Cherokee Basin, LLC—which later became known as CEP Midcontinent, LLC—in 2007. *Id.* CEP was purchased by a third party in 2017. *Id.* Soon afterward, that entity assigned its interest in the wells to Bullseye Energy. *Id.* Bullseye Energy retained its 100 percent interest in Plaintiffs' wells until this lawsuit was filed; it sold its interest in those wells in 2019 and 2020 while this action was pending. *Id.* It is not clear from the record whether any liabilities associated with the operation of Plaintiffs' wells were transferred along with the interests in the wells.

[7] Wild West sold its assets to a third party in 2019, the same year that Bullseye ceased operating the wells at issue in this case. Dkt. 471 at 8, n.5.

5

price it received when it resold the gas to Cotton Valley, minus a thirty percent fee. *Id.* at 10-11. Beginning in mid-2004, the contracts were modified, and Wild West paid Bullseye Energy and CEP an amount equal to the weighted average price received from Cotton Valley minus either a thirty percent fee or a fee of $0.87 per MMBtu, whichever yielded the higher price to Bullseye Energy and CEP. *Id.* at 11.

The payment arrangement might have been satisfactory to Plaintiffs if Wild West were a third-party entity competing with other purchasers on the open market. But the evidence of record is sufficient to suggest that Wild West was not an independent third party and did not operate as one: Wild West was owned in part by CEP and in part by Defendants Robert Kane, Mark Kane, Ann Kane Siedman, and Louise Kane Roark. Robert and Mark Kane, Ms. Seidman and Ms. Roark also collectively owned controlling interests in Bullseye Energy, Bullseye Operating, and KRS&K, among other entities. *See* Dkt. 484-9 at 17, 22-23, 26-27. Robert Kane was the manager of Wild West, the managing partner of KRS&K, and the President of Bullseye Energy. Dkt. 484-4 at 25-27, 32; Dkt. 484-9 at 32-33. And Mr. Kane admits that, when agreements were entered into by and between those entities, he worked both sides of the deal. *See* Dkt. 484-4 at 62-64 (acknowledging that, when Bullseye Energy purchases gas from Wild West, Mr. Kane is "both the buyer and the seller"); Dkt. 484-9 at 36 ("Q: And are you [Bullseye Energy] in this instance or are you the gathering system? A: I had both hats on it.").

The Plaintiffs cry foul because of the relationship between Wild West, CEP, and Bullseye Energy. They argue that the sales to Wild West by CEP and Bullseye Energy are shams designed to force Plaintiffs to shoulder a thirty-percent fee that they never agreed to bear. Dkt. 484 at 5. Plaintiffs suggest that the lease agreements required Bullseye Energy and CEP to pay them royalties based on the amounts "received" from the sale of Plaintiffs' gas, and that the amount "received" should be calculated by reference to the first truly

6

independent sale—the sale to Cotton Valley—and not the intervening sale orchestrated and controlled by Robert Kane.

Bullseye Energy and CEP maintain that, notwithstanding the close relationship between Wild West, Bullseye Energy, CEP, and others, the undisputed facts fail to demonstrate that they breached any of their contractual obligations. *See* Dkt. 471 at 21-36. They argue that the plain language of the lease agreements permitted them to calculate Plaintiffs' royalties without referring to the deductions taken by Wild West, and that, even if those deductions are considered, the deductions were reasonable, fair, and permissible. *Id.* The Court disagrees and concludes that these Defendants have not shown that there are no facts that would permit a jury to find in Plaintiffs' favor.

A

Defendants claim that the plain language of the lease agreements did not require them to consider the Cotton Valley-Wild West sale (or the associated fees collected by Wild West) when calculating the royalties owed to Plaintiffs. The Court agrees that the lease agreements' express terms require only that royalty payments be determined by reference to the gross proceeds received by Bullseye Energy or CEP. *E.g.,* Dkt. 471-1 at 31. But under Oklahoma law, the leases are deemed to incorporate not only their express terms, but also those terms and covenants necessary to give effect to the intentions of the parties. *See Indian Territory Illuminating Oil Co. v. Rosamond*, 1941 OK 410, ¶ 14, 190 Okla. 46, 120 P.2d 349, 354. It is reasonable to infer that the parties in this case intended that the "gross proceeds received" by Bullseye Energy and/or CEP would be the product of a fair, good-faith transaction, and that this was, implicitly, part of the parties' agreement.[8] *Bonner v.*

---

[8] Defendants do not suggest otherwise: They do not, for example, argue that they had a contractual right to stiff Plaintiffs by selling their gas to a shell company at fire-sale prices; instead, they argue that the amounts they paid under the lease agreements were good-faith transactions similar to others made on the open market. Dkt. 471 at 28-29.

12-cv-411
c/w 15-cv-455

*Oklahoma Rock Corp.*, 1993 OK 131, ¶ 17, 863 P.2d 1176, 1184 (recognizing that implied-in-fact covenants are inferred by the words used in the agreement to give effect to the parties' intent). *See Tara Petroleum Corp. v. Hughey*, 1981 OK 65, ¶ 14, 630 P.2d 1269, 1273 (concluding that payment of a royalty based upon the market price will discharge the producer's obligations when "the producer enters into an *arm's-length, good faith* gas purchase contract with the best price and term available to the producer at the time" (emphasis added)).

Having determined that the lease agreements included an implicit promise that the sales by Bullseye and CEP would be fair, good-faith transactions, the Court next turns to the question of whether a jury could find that the sales between Wild West and Bullseye Energy/CEP were not good-faith transactions, but were instead insider deals between related entities that had the purpose and effect of minimizing the amounts paid to Plaintiffs and maximizing the amounts paid to CEP, Bullseye Energy, and their affiliated entities. Although Defendants have presented evidence of the fairness of the transactions, the evidence of record is sufficient to permit a jury to find that the Wild West-CEP/Bullseye Energy sales were insider transactions made without regard to corporate formalities or Plaintiffs' interests or expectations under the lease agreements. *See* Dkt. 484-4 at 25-26, 62-64; Dkt. 484-9 at 17-37. Because a jury could find that Bullseye Energy and CEP breached a covenant that was implied in fact by the lease agreements, the Court declines to enter summary judgment in favor of those Defendants based solely on their compliance with the written terms of those agreements.

B

Bullseye Energy and CEP next argue that, even if the sale to Wild West is disregarded, they are nevertheless entitled to summary judgment. In support, they argue that (1) the gas received from Plaintiffs was marketable at the wellhead, so (2) they could charge Plaintiffs a proportionate share of the transportation, compression, dehydration, and blending costs that were used

8

Case 4:12-cv-00411-JDR-CDL   Document 501   Filed in USDC ND/OK on 07/01/25   Page 9 of 16

12-cv-411
c/w 15-cv-455

to increase the value of the end-product. Dkt. 471 at 24-36. Thus, they contend, even if the Court were to construe the payments made by Cotton Valley as the amounts "received" by Bullseye Energy and CEP under the lease agreements, the Defendants did not breach their obligations to Plaintiffs because they were entitled to pass on a proportionate share of their costs (in this case, thirty percent of the amount paid by Cotton Valley) to the Plaintiffs. *Id.*

Although Bullseye Energy and CEP have presented evidence that *could* permit a jury to find that the thirty-percent fee paid to Wild West was permissible, they have not demonstrated the absence of any facts that would permit a jury to conclude otherwise. Defendants argue that they were permitted to deduct a portion of the processing and transportation costs because Plaintiffs' gas was marketable "at the wellhead." *Id.* at 471 at 24-25 (arguing that the costs paid to Wild West were allowed because the corresponding processing "enhanced the value of an already marketable product"). *See Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 786 (10th Cir. 2019) (recognizing that, under Oklahoma law, the costs of making gas marketable cannot be deducted from a royalty payment, but lessees may deduct a proportionate share of certain costs associated with improving an already marketable product). But there is evidence in the record that at least some of Plaintiffs' gas was *not* marketable at the wellhead. Some Plaintiffs' gas was blended with other gas to render it marketable. *See* Dkt. 484-4 at 48 (indicating that the gas "was blended" and Wild West "would take any gas that we had, but if we got our totals out of pipeline specification . . . then we knew which wells were trouble wells . . . and we would shut those wells in until we could get the whole system back into line"). It is not clear which wells, if any, ran afoul of pipeline specifications and required blending to bring them "into line." *Id.*[9] But it is

---

[9] Defendants argue that the "last gas analysis performed with respect to Plaintiffs' wells show that the gas from those wells was within acceptable pipeline limits," but they do not clarify whether this was the case for the life of the leases. Dkt. 471 at 31. Furthermore,
*(footnote continues)*

9

12-cv-411
c/w 15-cv-455

clear that a jury could find that at least some of Plaintiffs' gas was not marketable at the wellhead, which means that at least some of the fees charged to Plaintiffs were impermissible under Oklahoma law. *See Naylor Farms*, 923 F.3d at 786.

Because a question of fact exists as to whether Defendants impermissibly deducted fees from Plaintiffs' royalties, the Court need not address Defendants' contention that those fees were reasonable, enhanced the value of Plaintiffs' gas, and were allocated proportionately as required under Oklahoma law. *See Howell v. Texaco Inc.*, 2004 OK 92, ¶ 20, 112 P.3d 1154, 1159-60 (setting forth the circumstances where costs of improving gas may be allocated to the lessor). The Court notes, however, that the producer bears the burden of justifying the costs and expenses it incurs. *Id.* Bullseye Energy and CEP present scant evidence justifying their costs and expenses. They note only other operators charged similar (or higher) fees, and that the fee was determined by reference to Wild West's operation costs. Dkt. 471 at 33-34. This evidence does not establish the absence of a genuine dispute regarding the reasonableness and proportionality of the fees charged to Plaintiffs. Indeed, the Court has difficulty understanding how the rates charged by *different* operators to process *different* gas collected at *different* wells has any bearing on the question of whether the processing costs *in this case* are necessary, reasonable, or proportionate under the circumstances presented here.

Defendants Bullseye Energy and CEP have not met their burden of establishing that they are entitled to summary judgment. Based on the evidence provided with the parties' briefs, a reasonable jury could find that Bullseye Energy and CEP breached their implied-in-fact obligations under the lease agreements and impermissibly charged Plaintiffs costs associated with

---

the evidence shows that at least one well was not within Cotton Valley's pipeline requirements until it was blended with other gas. Dkt. 471-1 at 7-8.

bringing some of Plaintiffs' gas into marketable condition. Furthermore, those Defendants have failed to point to evidence that would permit a jury to conclude that the processing costs passed on to Plaintiffs were necessary, reasonable, and proportionate. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiffs' breach-of-contract claim.

### III

The Court next turns to Plaintiffs' fraud claims, which are also directed at Defendants Bullseye Energy and CEP. *See* Dkt. 480 at 6. Plaintiffs allege that, although Bullseye Energy and CEP entered into lease agreements that did not allow them to deduct processing costs from the payments made to Plaintiffs, those Defendants nevertheless passed processing costs on to Plaintiffs by engaging in sham sales with Wild West. Dkt. 484 at 5-6. Plaintiffs' fraud claims are based largely on the facts giving rise to their breach-of-contract claims and discussed in Section II, *supra*, with one twist—Plaintiffs assert that, beginning in or around 2004, Bullseye Energy and CEP regularly represented (falsely) that no deductions were taken from the royalty payments by placing a zero in the "deductions" columns of Plaintiffs' check stubs. *See id.* Plaintiffs assert that they were misled by this statement and believed (incorrectly) that no deductions of any kind had affected their royalty payments. *See* Dkt. 484-10 at 54 (indicating that there was "always . . . a zero in the deduct columns" and that language meant there were "no deductions").

The Court has reviewed the record and concludes there are facts that would permit a jury to find in Plaintiffs' favor with respect to the fraud claims. Under Oklahoma law, fraud can be established by evidence that a defendant (1) made "a false material misrepresentation" as a positive assertion when (2) the defendant knew the statement to be false or made the statement recklessly without knowledge of the truth, (3) the defendant intended that a third party

12-cv-411
c/w 15-cv-455

act upon the statement, and (4) a third party did rely on the statement to its detriment. *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218.

The evidence of record is sufficient to establish each of these elements. A jury could find, based on the evidence discussed in this opinion, that Bullseye Energy and CEP falsely or recklessly stated that "zero" deductions were being taken from Plaintiffs' royalty payments despite knowing that, by the time Plaintiffs' royalty payments were made, a thirty percent processing fee had been paid to Wild West by Bullseye and CEP.[10] Although Bullseye Energy and CEP argue that there is no evidence of any intent to defraud Plaintiffs, a jury could infer intent from the evidence of the relationships between Bullseye Energy, CEP, Wild West, and Robert Kane, as well as the evidence that Mr. Kane disregarded corporate formalities and potential conflicts of interest when he collectively managed these (and other) entities. And there is evidence in the record that at least some of the Plaintiffs took Bullseye Energy and CEP at their word when they represented that no deductions were being taken from their royalty payments. *See* Dkt. 484-10 at 54.[11] After reviewing the evidence attached to the parties' motions, the Court simply cannot say

---

[10] Defendants suggest that they did not "make" the false statement at issue here. *See* Dkt. 471 at 16. In support of this statement, they point to Robert Kane's deposition, which indicates that Wild West issued the checks to royalty owners, including Plaintiffs. *Id.* But Defendants acknowledge that Wild West sent those checks on their behalf. *See* Dkt. 471 at 8 (stating that Wild West issued checks "on behalf of Bullseye Energy and CEP"). Furthermore, the person who selected the language admittedly worked on behalf of and directed the affairs of CEP, Bullseye Energy, and others. *See* Section IIA, *supra*. The Defendants do not explain why a statement made on behalf of Bullseye Energy and CEP by an individual who directed those entities should not be charged against those entities, nor can the Court come up with any reason that would justify such an outcome.

[11] Defendants suggest that at least Plaintiff James Miller could not have relied upon the misrepresentation because he executed a gas purchase agreement with Wild West that contained terms "similar" to those contained in the Bullseye-Wild West agreements. Dkt. 471 at 15. Although a jury might find this information relevant to the question of James Miller's reliance, the Court is not persuaded that this evidence precludes a jury from finding that Mr. Miller relied on Defendants' representations to his detriment.

that there is *no* evidence that would permit a jury to find in Plaintiffs' favor with respect to any of the essential elements of their fraud claims.

Defendants argue that Plaintiffs' claims are barred because they were informed that their royalty payments were determined based on proceeds paid to Bullseye Energy or CEP "under a contract between the producer and its purchaser (including affiliated purchasers)," which authorized the deduction of certain charges. Dkt. 471-2 at 43. The Court disagrees that this language defeats Plaintiffs' fraud claims. A jury *might* believe that this language put Plaintiffs on notice that Bullseye Energy and CEP were selling gas to affiliated purchasers, but the language is not the model of clarity, and it fails to definitively state what Plaintiffs claim they were entitled to know: Bullseye and CEP were selling Plaintiffs' gas to a closely related company who then resold that gas to an independent third party and took a thirty percent share of that arms-length sales price. Whether the additional information provided by Defendants was sufficient to defeat Plaintiffs' claims of reliance or put Plaintiffs on notice of their fraud claims more than two years prior to the filing of this lawsuit is a question of fact for the jury. *Bowman*, 2009 OK 48, ¶ 30, 212 P.3d at 1222 (concluding that the question presented in a fraud case "is not whether a buyer was somehow unwise to rely on a representation of material fact, but whether the buyer was in fact deceived by the representation," and that this question "falls into the realm reserved for the trier of fact" (citation and quotation marks omitted)). Because this and other questions of fact remain with respect to Plaintiffs' fraud claims against Bullseye Energy and CEP, the Court denies Defendants' motions for summary judgment with respect to those claims.

## IV

Finally, the Court turns to Plaintiffs' RICO claims, which are asserted against Defendants Robert Kane and CEP. *See* Dkt. 480 at 6. Plaintiffs first claim that Mr. Kane and CEP violated 18 U.S.C. § 1962(c). To prevail on this

12-cv-411
c/w 15-cv-455

claim, Plaintiffs must show that CEP and/or Mr. Kane: (1) conducted or participated in the conduct of (2) an enterprise engaged in or affecting interstate or foreign commerce (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (citing 18 U.S.C. § 1962(a)-(c)); *see BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (affirming summary judgment where the plaintiffs had failed to establish that "the Title Companies participated in the conduct of the alleged RICO enterprise" (quotation marks omitted)); *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 1:23-cv-00903 KWR/JFR, 2025 WL 872972, at *22 (D.N.M. Mar. 19, 2025) (recognizing that, to establish liability under § 1962(c), a plaintiff must show that the defendant itself committed two or more predicate acts). The Court has reviewed the record and concludes that Plaintiffs have failed to point to any evidence that Mr. Kane or CEP violated § 1962(c).

As a preliminary matter, Plaintiffs have failed to set forth facts that would permit the Court to find the existence of a RICO enterprise: "To establish an enterprise, [P]laintiffs must show (1) an ongoing organization with a decision-making framework or mechanism for controlling the group; (2) with associates that function as a continuing unit; and (3) which is separate and apart from the pattern of racketeering activity." *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 600 (D. Kan. 2004) (citing *United States v. Sanders*, 928 F.2d 940, 943–44 (10th Cir. 1991)). It is not enough to point to a group of entities and cry "enterprise." Plaintiffs must point to an "ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Dirt Hogs Inc. v. Nat. Gas Pipeline Co. of Am.*, 210 F.3d 389, 2000 WL 368411, at *2 (10th Cir. Apr. 10, 2000) (quoting *United States v. Rogers*, 89 F.3d 1326, 1337 (7th Cir.1996)). Although Plaintiffs have identified two

12-cv-411
c/w 15-cv-455

purported enterprises in their pleadings,[12] they have pointed to no facts that, if true, could permit the jury to conclude that the entities they identified operated in a way that establishes the existence of RICO enterprises.

Even if Plaintiffs could establish the existence of one or more RICO enterprises, they have failed to point to facts that, if true, would permit a jury to find that either CEP or Mr. Kane conducted or participated in the conduct of those enterprises in violation of § 1962(c). To establish this element, Plaintiffs must present some evidence that the Defendants conducted or attempted to conduct the affairs of the enterprise itself. *See BancOklahoma*, 194 F.3d at 1100. There is no such evidence in the record. Plaintiffs assert that CEP was a "silent partner" that "clearly 'devised and intended to devise a scheme . . . to defraud royalty owners,'" [Dkt. 484 at 4, 15, 16], but they do not point to any meaningful involvement by CEP, nor do they point to any acts that CEP took to direct or control anyone or anything.[13] And although there is evidence that Mr. Kane directed one or more entities *within* the purported RICO enterprises, Plaintiffs have pointed to no specific evidence that Mr. Kane directed the affairs of the *enterprises themselves. Cf. BancOklahoma*, 194 F.3d at 1101-02 (affirming grant of summary judgment where the plaintiffs' nonspecific affidavits contained sweeping conclusory statements that described activities performed in the normal course of business, but failed to establish that the defendant directed the activities of or participated in the operation of the alleged enterprise). Without that evidence, Plaintiffs' § 1962(c) claims must fail.

---

[12] The first enterprise is allegedly composed of Wild West, White Hawk Gas, Inc., and Purgatory Creek Gas, Inc. The second is allegedly composed of Wild West, White Hawk, Bullseye Energy, Bullseye Operating, Gasahoma, Purgatory Creek, and New Cotton Valley Gas Transmission, LLC. Dkt. 154 at 23-355.

[13] To the contrary, the evidence of record suggests that CEP's role in the activities giving rise to this lawsuit was that of a passive investor. Dkt. 484-4 at 137-39.

12-cv-411
c/w 15-cv-455

Because Plaintiffs cannot make out a claim under § 1962(c), any claims they have under § 1962(d) also fail. *See id.* at 1103 ("A conspiracy claim under 18 U.S.C. § 1962(d) fails when the substantive claim based on § 1962(c) is without merit."). And the Court can discern no arguments or facts suggesting that Plaintiffs are asserting RICO claims under §§ 1962(a) or (b). Accordingly, the Court concludes that CEP and Mr. Kane are entitled to summary judgment with respect to Plaintiffs' RICO claims.

V

For the reasons set forth above, genuine issues of disputed fact remain with respect to Plaintiffs' fraud and breach-of-contract claims against Bullseye Energy and CEP. Robert Kane and CEP, however, have demonstrated the absence of a genuine issue for trial with respect to the RICO claims asserted against them. Accordingly, the Court denies Bullseye Energy Inc.'s Motion for summary judgment [Dkt. 471]; grants Robert Kane's motion for summary judgment [Dkt. 472]; and grants in part and denies in part CEP Mid-Continent, LLC's motion for summary judgment [Dkt. 476]. This case will proceed to trial solely with respect to Plaintiffs' breach-of-contract and fraud claims against Defendants Bullseye Energy and CEP, and Plaintiffs' accounting claims against Bullseye Energy, CEP, and KRS&K.

DATED this 1st day of July 2025.

JOHN D. RUSSELL
*United States District Judge*